IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EYVONNE ARTIS,
   *Plaintiff,*

v.                               Civil Action No.: ELH-11-3406

U.S. FOODSERVICE, INC.,
   *Defendant.*

**MEMORANDUM OPINION**

Plaintiff Eyvonne Artis, who is self represented, has sued her employer, U.S. Foodservice, Inc. ("USF"), defendant, alleging that she was discriminated against on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. *See* Complaint (ECF 1); Amended Complaint (ECF 10). She has also sued for "slander, false statement damaging [her] character." ECF 10 at 4.

Defendant has filed a motion to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Motion," ECF 14),[1] along with a supporting memorandum ("Memo," ECF 12). Plaintiff has not filed an opposition to the Motion.[2] No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.

---

[1] Defendant originally filed "Defendant's Motion To Dismiss Plaintiff's Amended Complaint," which indicated that defendant was moving to dismiss pursuant to Rule 12(b)(6) (ECF 11). ECF 14 is "Defendant's Amended Motion To Dismiss Plaintiff's Amended Complaint." ECF 11 is denied as moot.

[2] Eight days after plaintiff's opposition to the Motion was due, defendant filed "Defendant's Notice Of Plaintiff's Failure To Oppose Defendant's Motion To Dismiss Plaintiff's Amended Complaint" (ECF 15). Observing that plaintiff "failed to file an opposition," defendant argued that "the Court may rule on USF's Motion to Dismiss and should grant it as conceded." *Id*. at 1. Defendant asserted, *id.* at 1-2:

> By failing to file her opposition, Plaintiff has effectively conceded that the Court should grant USF's Motion to Dismiss. *See Ferdinand-Davenport v. Children's*

**Factual and Procedural Background**[3]

Defendant moved to dismiss plaintiff's original "Complaint For Employment Discrimination" ("Complaint"), alleging that plaintiff's claim was time-barred. *See* ECF 7. In her Complaint, filed on November 23, 2011, plaintiff stated that she "received a right to sue letter" on August 24, 2011. *See* Complaint ¶ 10. A plaintiff alleging claims under Title VII must file suit within ninety days of the receipt of a right to sue letter. *See* 42 U.S.C. § 2000e-5(f)(1). Therefore, if plaintiff received the right to sue letter on August 24, 2011, the ninety day deadline expired on November 22, 2011, one day before her suit was filed. I noted that the right to sue letter, which was appended to plaintiff's Complaint, reflected that it was *mailed* on August 24, 2011, despite plaintiff's averment that she *received* it on that date.

Accordingly, I granted the unopposed motion to dismiss, without prejudice, *see* ECF 8, 9, stating, ECF 8 at 2-3:

> It seems unlikely that plaintiff received the right to sue letter the same day it was mailed, which is essentially what is alleged in her Complaint. Because plaintiff has not responded to the Motion, she has not clarified the date of receipt.

---

> *Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (dismissing discriminatory discharge claim as "abandoned" because plaintiff did not respond to the defendant's motion to dismiss); *Stewart Title Guar. Co. v. Sanford Title Servs., LLC*, Civ. No. ELH-11-620, 2012 [sic] WL 55477997, at *3 (D. Md. Nov. 10, 2011) ("The failure to respond to [a] Motion [to dismiss] is tantamount to a waiver of any opposition on the merits.").

In *Muhammad v. Maryland*, No. ELH–11–3761, 2012 WL 987309, *1 n.3 (D. Md. Mar. 20, 2012), I explained: "'[T]he Court need not grant a motion to dismiss based on the failure to file a timely opposition when the motion is plainly lacking in merit.' *United States v. Sasscer*, Civ. No. Y–97–3026, 2000 WL 1479154, at *2 n. 6 (D. Md. Aug.25, 2000)." Indeed, in *Muhammad*, the Court rejected meritless arguments advanced by the defense, despite the plaintiff's failure to oppose them. Therefore, I will consider the merits of defendant's arguments, even if they are unopposed by the pro se plaintiff.

[3] The Court construes the facts alleged in the Complaint in the light most favorable to plaintiff as the non-moving party. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Moreover, because plaintiff is proceeding *pro se*, her filings are to be "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).

If plaintiff had alleged that the letter was *mailed* August 24, 2011,[] the Court would presume receipt three days after postmark.[4] This means the clock for filing suit would have started to run on August 27, 2011, making the deadline for filing suit November 25, 2011, two days *after* plaintiff filed suit. In other words, her suit would be timely.

Because plaintiff is self-represented, and may not have appreciated the significance of the distinction between mailing and receipt, as well as the need for a precise factual averment, I will grant the Motion, without prejudice to plaintiff's right to amend her Complaint, provided that she does so within fifteen (15) days from the date of the docketing of the attached Order.

Plaintiff filed her form "Amended Complaint For Employment Discrimination" ("Amended Complaint") within the designated fifteen day window. It specifies that plaintiff received the right to sue letter on August 27, 2011. *See* ECF 10.

Plaintiff has filed a form complaint, claiming discrimination on the basis of gender, in violation of Title VII. *Id.* at 1, 2. According to the Amended Complaint, plaintiff has been employed by USF for eleven years. *Id.* at 2. She averred that she "never had problem [sic] with management male or female, except for Mrs[.] Sullivan[,] who has a problem with the female [sic] in the warehouse…." *Id.* Plaintiff explained that "about 200 males" worked in the warehouse, along with five women, and she is "the only [female] left." *Id.* at 2-3. According to plaintiff, Sullivan "treated the male [sic] different" and "never wrote one up" until after Artis "file[d] chargez [sic]." *Id.* at 2. Artis asserted that she has "been discriminated by [her] gender," and has "been personally attacked, harass [sic] and false accuse [sic] by this supervisor for years." *Id.* at 3. She insisted that the misconduct continued "even after [her] case was grievance [sic] by Local Teamster Union numerous time [sic]." *Id.*

Plaintiff seeks one day's back pay, as well as an injunction requiring USF "to send proof

---

[4] Under Fed. R. Civ. P. 6(d), if the date of receipt is unknown or in dispute, "courts presume receipt three days after mailing." *Ish v. Arlington County Virginia*, 918 F.2d 955, *1 (4th Cir. 1990) (discussing predecessor rule, Fed. R. Civ. P. 6(e)).

of accusations they send [sic] to the EEOC because Mrs. Sullivan has never had a witness nor didn't [sic] have proof" of her accusations. *Id.* at 3. She also seeks monetary damages in an unspecified amount, costs, and attorney's fees. *Id.* at 4. In the section of the form pertaining to requested relief, on the line provided next to "Other (specify)," plaintiff wrote "slander, false statement damaging my character." *Id.*

The Amended Complaint twice refers to attachments, *id.* at 2, 3, but no attachments were submitted. However, the original Complaint included several unnumbered attachments, and is substantially identical to the Amended Complaint, except for the date of receipt of the right to sue letter. Therefore, I shall consider the attachments appended to the Complaint. *See Jeffrey M. Brown Assoc., Inc. v. Rockville Ctr. Inc.*, 7 F. App'x 197, 202 (4th Cir. 2001) (noting that a district court should not "consider the *allegations* of the original complaint," but "*may…*consider certain *exhibits* attached to the original complaint that are 'integral to and explicitly relied on in the [amended] complaint,' and whose authenticity is not challenged…") (emphasis and alterations in *Brown*) (citation omitted); *accord Onawola v. Johns Hopkins Univ.*, 412 F. Supp. 2d 529, 530 n.1 (D. Md. 2006).

Plaintiff appended her right to sue letter (plaintiff's Exhibit A) to the Complaint. It reflects that it was mailed on August 24, 2011. Plaintiff also appended a letter of July 26, 2011, which she received from Christie Boyd, the EEOC Investigator assigned to her case (plaintiff's Exhibit B), in turn enclosing USF's position statement of July 25, 2011 (plaintiff's Exhibit C). Boyd instructed plaintiff to review USF's submission and informed her of her right to file a rebuttal. Plaintiff also appended to her Complaint a six page, handwritten statement (plaintiff's Exhibit D), expanding on the meager facts included in the form complaints, ECF 1 and ECF 10.

In her written statement, Artis stated that she has been employed by USF as a "loader"

since September 5, 2000. Plaintiff's Exh. D at 1. She recounted that, at some unspecified point, Nadine Sullivan injured her back. *Id*. Thereafter, it became plaintiff's responsibility to "close the truck door" and "bay door" of the vehicles for which she was responsible. *Id*. Plaintiff asserted, however, that Sullivan continued to "close the doors for the male loader[s]." *Id*. When plaintiff asked Sullivan "why she close the men door [sic] and not [plaintiff's]," Sullivan replied that "it isn't her job." *Id*.

Plaintiff added that, on February 14, 2010, Sullivan went into the "driver break room" and asked Artis to close doors "37 and 40 on the dock." *Id*. Plaintiff replied that she was on her lunch break, so Sullivan called another employee on the radio, a "jockey" rather than a "loader," and "told them to go to lunch and move the truck when they return." *Id*. Two other employees were present at the time. *Id*. Plaintiff then "left the driver break room and return [sic] to the dock." *Id.* at 2. As she "was loading another door 38," Sullivan came over to the door and said that she needed Artis "to close the doors 37 and 40." *Id*. Plaintiff thought Sullivan had told the jockey to perform the task. *Id.* Sullivan then started to "yell on the radio for…the shift manager." *Id.* Plaintiff closed door 37 and, as she was closing door 40, the shift manager arrived, and Sullivan indicated that plaintiff had not locked door 37. *Id*. Plaintiff responded: "Nadine, why do you come down and close the guy['s doors] when they are not here and you won't close mine." *Id.* Sullivan responded again that "it isn't her job." *Id.*

It appears that, at this point, plaintiff received a suspension.[5] Plaintiff reiterated that

---

[5] The duration of the suspension is not clear, but presumably it corresponds to the one day of back pay that plaintiff seeks to recover. Although at this juncture the Court must construe all facts in the light most favorable to plaintiff, it should be noted that in USF's position statement of July 25, 2011, submitted to the EEOC, defendant asserted, Exh. C. at 1:

> Ms. Artis was suspended for saying to her female supervisor "Your ass is mine." This followed a long history of challenging engagements that Ms. Artis has had with her boss….[I]t is a clear violation of USF's anti-harassment policy and is an

5

Sullivan "never wrote up a male in the company," and if she did, "it was after" plaintiff filed a charge with the EEOC. *Id.* at 3. She insisted that Sullivan "has had a problem with every female except one."[6] *Id.*

In addition, plaintiff described other occasions for which she believed she was treated poorly based on her gender. On September 13, 2011, she saw another loader, identified only as "Spiro," unloading a truck, with four pallets left to unload. *Id.* Sullivan stopped her and asked: "[A]re you going to help Spiro unload the truck[?]" At that point, plaintiff assisted Spiro in removing the two pallets that remained on the truck. *Id.* She then "punched out" with the other employees, but before she could leave, was called to the office of Robert Jellion, where Sullivan was waiting.[7] *Id.* at 4. Jellion asked Artis to sit down, but she responded that she was "off the clock" and wanted a "shop steward" present at the meeting "because Mrs. Sullivan isn't going to start lie [sic] on me again." *Id.* Nonetheless, the meeting appears to have continued, and plaintiff explained that she was criticized for working too slowly, a claim she disputed.

Another incident occurred on October 19, 2011. *Id.* On that day, a USF employee, Dave Farmer, told plaintiff that she "had to use the blue pallets." *Id.* According to plaintiff, male employees were using the brown pallets, not the blue pallets. *Id.* at 5. She alleged that Sullivan witnessed Spiro and another employee, referred to as "George," using the brown pallets, but "said nothing." *Id.* But, when plaintiff "start[ed] using the brown pallets," Sullivan "came down

---

act of insubordination that probably could have justified her termination.

Plaintiff does not include any reference to this alleged altercation in her Complaint, Amended Complaint, or in Exhibit D. But, she said that she has proof "that what the company sent in to [Boyd]" was "false." Exh. D at 3.

[6] Plaintiff has not identified the female employee who apparently did not clash with Sullivan.

[7] It is not clear what position Mr. Jellion held at USF, but context suggests he served in a supervisory or managerial role.

and said Eyvonne you have to use the blue pallets and you to[o] George." *Id*.

A third incident occurred on November 10, 2011, when plaintiff was "out back smoking." *Id*. She was joined by two male employees. *Id*. Sullivan came out and began to "talk with one of the guys." *Id*. She eventually went back inside, having "said nothing" about the smoking. *Id*. Thereafter, another supervisor, Ken Goins, "came out and said no smoking out here." *Id*. Plaintiff asked "why Mrs. Sullivan didn't say anything when she came out." *Id*.[8]

And, plaintiff asserted that on November 9, 2011, she was informed that John Marven, a USF employee, had been told by Sullivan to inform human resources that Artis had threatened him.[9] *Id*. at 5-6. Marven confirmed with Artis that Sullivan had indeed made that request. *Id*. at 6. Artis insisted that she never threatened Marven, and claimed that Marven denied the incident when asked about it by Ken Goins. *Id*. Shortly thereafter, on November 14, 2011, plaintiff was instructed to report to human resources, where she was told that her supervisors had described her as "question[ing] everything they tell [her] to do," which she insisted "isn't true." *Id*. Plaintiff used the opportunity to tell a human resources employee named Regina[10] "how they been [sic] treating [her]." *Id*.

**Standard of Review**

As noted, defendant has moved to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir.

---

[8] There is another sentence in this paragraph in Exhibit D, but it is illegible. In any event, the gravamen of the incident is not apparent to the Court.

[9] Plaintiff actually wrote "treat him." *Id*. at 6. Context suggests this was a spelling error.

[10] Regina's surname does not appear in the record.

2006). Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve,* 628 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd,* 85 F. App'x 960 (4th Cir. 2004). "[A] motion to dismiss under Rule 12(b)(1) is nonwaivable and may be brought at any time-even on appeal-regardless of whether a litigant raised the issue in an initial pleading." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 548 (4th Cir. 2006); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Once a challenge is made to subject matter jurisdiction, the plaintiff bears the burden of proving that the Court has subject matter jurisdiction. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir.1999); *see also Ferdinand–Davenport,* 742 F. Supp. 2d at 777; *Khoury,* 268 F. Supp. 2d at 606. In ruling on a motion under Fed. R. Civ. P. 12(b)(1), the court "should 'regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Ferdinand–Davenport,* 742 F. Supp. 2d at 777 (quoting *Evans,* 166 F.3d at 647); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991), *cert. denied,* 503 U.S. 984 (1992). The court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans,* 166 F.3d at 647.

A defendant may also test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6). *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *German v. Fox,* 267 F. App'x 231, 233 (4th Cir. 2008). Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the

"grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. But, the rule demands more than bald accusations or mere speculation. *Id.* To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556. A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Id.* at 555.

In resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain,* 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.,* 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied,* ___ U.S. ___, 130 S. Ct. 1740 (2010). But, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson,* 551 U.S. at 94, and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009)). The court may also consider documents "attached or incorporated into the complaint," as well as documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips, supra,* 572 F.3d at 180; *see E.I. du Pont de Nemours & Co.,* 637 F.3d at 448.

Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal,* 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil

actions'. . ." (citation omitted)); *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Thus, a Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted).

## Discussion

In its Memo, defendant raises a number of arguments in support of its Motion. I shall address each in turn.

### *Failure To Append The Right To Sue Letter*

Relying on Rule 12(b)(1), defendant argues that plaintiff's Title VII claim "must be dismissed because she failed to fulfill a jurisdictional prerequisite—i.e., attaching to the Complaint a copy of her Notice of Right to Sue" from the EEOC. Memo at 2. To be sure, "'receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint.'" Memo at 2 (quoting *Davis v. North Carolina Dep't of Corrections,* 48 F.3d 134, 140 (4th Cir. 1995)). It is true that plaintiff did not append a second copy of the right to sue letter to her Amended Complaint. But, defendant cannot seriously argue that plaintiff did not receive a right to sue letter. Indeed, defendant has commented on the content of that letter in its submissions.

Moreover, plaintiff appended a copy of her right to sue letter to her Complaint. The Amended Complaint also refers to "attach sheets." Given plaintiff's *pro se* status, the Amended Complaint has the effect of incorporating by reference the attachments to the original Complaint. *See Brown, supra,* 7 F. App'x at 202.

*Richardson v. Schaefer & Strohminger, Inc.*, No. Civ. CCB-05-3131, 2006 WL 559112, *1 (D. Md. Mar. 8, 2006), provides guidance. There, Judge Blake said: "[Defendant] contends

that because the Amended Complaint omits several pieces of information, including the nature of his claim, the date of [plaintiff's] termination, and the date he received the Notice of Right to Sue from the EEOC—the actual notice is also not attached—it is facially insufficient.  The court rejects this argument in light of [plaintiff's] *pro se* status; his Amended Complaint will be read as incorporating the relevant information in his initial complaint."  I decline to dismiss plaintiff's suit because she failed to reattach the right to sue letter to her Amended Complaint.

*Timeliness*

Defendant argues, as it did in its first motion to dismiss, that the Court lacks subject matter jurisdiction over plaintiff's claims because the Complaint was not timely filed.  It contends: "Although Plaintiff has amended her Complaint to plead that she received her right-to-sue letter on August 27, 2011 (88 days before she filed suit), she has not offered any proof that she received the notice of right-to-sue on that date.[]"  Memo at 3.  According to defendant, plaintiff "should have offered evidence, such as a postmarked envelope, that showed that she received it by mail on August 27, 2011 or otherwise showed the date of receipt.  Plaintiff's bare and unsubstantiated amendment to her pleadings fails to satisfy her burden of proving that her filing was timely." *Id.* at 3 n.1.  In defendant's view, plaintiff's "failure to present evidence regarding the date of receipt and to attach her right-to-sue letter precludes her from establishing jurisdiction over her claims." *Id.* at 4.

I am unaware of any authority that, at this juncture, compels a plaintiff to provide physical evidence establishing the date of receipt of the right to sue letter in order to prove that suit was timely filed.  The right to sue letter sets forth the date it was mailed.  At trial, a fact finder could credit plaintiff's testimonial evidence that she received the letter three days after it was mailed.  As I noted in ECF 8, at 2, "It seems unlikely that plaintiff received the right to sue

letter the same day it was mailed, which is essentially what is alleged in her Complaint." And, even if plaintiff received the right to sue letter one day after it was mailed, her suit would have been timely filed.

Moreover, the dispute as to the date of receipt requires the court to "presume receipt three days after mailing." *Ish*, *supra*, 918 F.2d at *1. *See Dixon v. Digital Equipment Corp.*, 976 F.2d 725, *1 (4th Cir. 1992) (same); *see also Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1 (1984) (allowing three days for mail service under then-Rule 6(e) for presumed receipt of right to sue letter from the EEOC); *Ragland v. Macy's, Inc.*, No. JKB–11–3106, 2011 WL 6370365, *1 (D. Md. Dec. 19, 2011) (observing that the "date of postmark should govern the calculation of when the right-to-sue letter was actually placed in the mail. Under Federal Rule of Civil Procedure 6(d), the ninety-day period for filing began three days later…"). Presuming receipt three days after mailing, plaintiff's suit was clearly filed within the 90 day window.

In support of its assertion that plaintiff "should have offered evidence" of the date of receipt, defendant cites two cases. In the first, *Williams v. Enterprise Leasing Co. of Norfolk/Richmond*, 911 F. Supp. 988, 992 (E.D. Va. 1995), it was undisputed that the EEOC issued plaintiff's right to sue letter on March 31, 1995, and that plaintiff filed suit on June 30, 1995, 91 days after the EEOC issued its right to sue letter. Defendant argued that, as plaintiff's complaint did not state the date of actual receipt of the right to sue letter, the court must presume receipt on the same day as issuance and dismiss the claim in its entirety. *Id*. Plaintiff's counsel argued that plaintiff received the right to sue letter by mail "several days after the date of its issuance," but plaintiff did not "fil[e] an affidavit or attempt[] to amend" his complaint. *Id*. Even so, the court, noting that it was "well aware that mail is the standard method by which the

EEOC issues right-to-sue notices," concluded that plaintiff was "entitled to the inference….that the notice was in fact mailed" and that suit was timely filed. *Id.* at 993. The court denied defendant's motion to dismiss and granted plaintiff twenty days to file "appropriate documentation *or an averment* regarding how and when the right-to-sue notice was received." *Id.* at 993 (emphasis added).

*Williams* is distinguishable from the case at bar. In the instant case, plaintiff has already filed an amended complaint clarifying the matter of receipt, in which she avers that she received the right to sue letter on August 27, 2011. And, defendant freely concedes that "it is not usual for plaintiffs to pick up a copy of their notice from the EEOC." Memo at 3 n.1.

Defendant also relies on *Williams v. Miracle Plywood Corp.*, No. 88-7714, 1990 WL 26310 (S.D.N.Y. Mar. 9, 1990). There, the plaintiff alleged in her complaint, as well as in an affidavit, that she received her right to sue letter on July 23, 1988. *Id.* at *3. But, defendants submitted a photocopy of a receipt for a certified letter indicating that plaintiff picked up an article of certified mail on July 21, 1988. *Id.* Although the receipt did not indicate who sent the letter, defense counsel supplied an affidavit regarding discussions with an EEOC employee who indicated that the certified mail number on the receipt corresponded with the certified number on the right to sue letter that the EEOC sent to plaintiff. *Id.* The court referred to the affidavit as a "hearsay affidavit" insufficient to show "a connection between the receipt and the Notice of Right to Sue." *Id.* at *4. "[F]aced with a sworn affidavit from plaintiff that she received the Notice on July 23, 1988, as well as her signed statement in her *pro se* complaint…stating that date of receipt was July 23, 1988," the court refused to "rest a dismissal…on defendants' counsel's assertion that the receipt before the Court [wa]s for the Notice of Right to Sue." *Id.*

To be sure, the court was "disturbed by the existence of the certified mail receipt…." *Id.*

13

It observed that "plaintiff's counsel [sic] continued reliance on plaintiff's unsubstantiated assertion as to the date of receipt may not be sufficient" to prove the timeliness of suit, and warned that, should defendants present "clear evidence linking the receipt…with the Notice of Right to Sue," the court would impose sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. *Id.* at *5. Here, defendant has not produced *any* evidence that plaintiff's averments are not truthful. Accordingly, *Williams* is inapposite.

*Failure To Exhaust Harassment Claim*

Defendant asserts that the Court "should dismiss Plaintiff's claims for harassment…because she failed to exhaust her administrative remedies with respect to that claim," thus depriving the Court of subject matter jurisdiction. Memo at 4. USF argues: "Although vague, Plaintiff's Amended Complaint suggests that she is pursuing a claim for harassment against USF….Because Plaintiff failed to raise these claims in her Charge…, she cannot raise them now for the first time in her Amended Complaint.[]" *Id.* at 6.

"[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over that claim." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citation omitted). And, "[t]he scope of the plaintiff's right to file a federal lawsuit is determined by the…contents" of the charges filed by the plaintiff with the EEOC or a corresponding state agency during the process of exhaustion. *Id.* (citation omitted). Put another way, "'[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'" *Id.* (citation omitted).

Defendant's Exhibit A is a copy of the charge plaintiff submitted to the Maryland

Commission On Human Rights on May 9, 2010.[11]  In it, she averred:

>   I. I began my employment with [USF] on September 15, 2000[12] as a Loader.  I am one of the few females who works in the warehouse for [USF].  My immediate supervisor, Nadine Sullivan, treats the male employees more favorably and I have had numerous disputes with her as a result of that fact, which she reported to Shift Manager Ken Goin[s].  In addition, I previously spoke with Human Resources (Josie) about the unjustified firing of a colleague that Ms. Sullivan was involved with.[13]  As a result, on February 14, 2010, I was suspended by Goin[s] following a related incident where males were given preferential treatment by Sullivan and she accused me of creating a hostile work environment.
>
>  II. [USF] did not provide a reasonable explanation for its actions.
>
> III. I believe I was discriminated against because of my sex, female[,] and retaliation [sic], as to suspension in violation of Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff also "checked the boxes" on the form indicating she was subject to retaliation and discrimination based on sex.  However, plaintiff did not explicitly state that she was harassed.

"A charge is sufficient 'only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'"  *Jones*, *supra,* 551 F.3d at 300 (citations and some internal quotation marks omitted).  Plaintiff's charge did not allege harassment with sufficient precision to enable her to "advance such claims in her subsequent civil suit."  *Id.* (citation omitted).  *See, e.g., Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996) (sexual harassment and discriminatory pay and benefits claims dismissed because EEOC charge alleged only failure to promote); *Dennis v. Cnty. of Fairfax,* 55

---

[11] As noted, in ruling on a motion under Fed. R. Civ. P. 12(b)(1), the court "'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'"  *Ferdinand–Davenport,* 742 F. Supp. 2d at 777 (citation omitted).

[12] In Plaintiff's Exh. D, at 1, plaintiff avers that she commenced work for USF on September 5, 2000.  The discrepancy is not material.

[13] This alleged incident is not discussed in any of the parties' submissions or exhibits.

F.3d 151, 156 (4th Cir. 1995) (discrimination in hiring, training, and promotion claims dismissed because EEOC charge alleged only disparate disciplinary treatment); *Hejirika v. Maryland Div. of Correction*, 264 F. Supp. 2d 341, 346 (D. Md. 2003) (harassment and hostile work environment claims dismissed because EEOC charge alleged only discriminatory failure to promote).

Accordingly, to the extent the Amended Complaint brings a claim of harassment or hostile work environment, that claim is dismissed.

*Failure To State A Claim For Slander Or Defamation*

As noted, in the "relief sought" section of the form Amended Complaint, at 4, plaintiff wrote "slander, false statement damaging my character." To the extent that this statement suggests that plaintiff sought to pursue a claim of slander or defamation,[14] defendant argues that such a claim should be dismissed for failure to state a claim upon which relief can be granted. Defendant asserts: "Plaintiff's Amended Complaint is devoid of a ***single factual allegation*** in support of her defamation claim, which is comprised of a single bald allegation in her Prayer for Relief that she is seeking damage for 'false statement[s] damaging [her] character.'" Memo at

---

[14] To the extent that plaintiff lodges any tort claims against defendant, Maryland law applies. With respect to tort claims, Maryland applies the principle of *lex loci delicti*, i.e., the law of the place where the alleged harm occurred. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC,* 529 F. Supp. 2d 604, 606 (D. Md. 2008); *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010). Because the alleged harm occurred in Maryland, the Court will apply Maryland law with respect to any tort claims brought by plaintiff. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (stating that the court "must apply the substantive law of the forum state including its choice of law rules)."

Defendant alternately refers to this "claim" as one for slander and as one for defamation. Under Maryland law, claims for slander and libel are considered "defamation" claims. *See, e.g., Rosenberg v. Helinski*, 328 Md. 664, 675, 616 A.2d 866, 871 (1992) ("It is unnecessary to draw nice distinctions in deciding whether [defendant's] oral comments made to a television news camera and recorded on film for broadcast constituted libel or slander; the tort at hand is the tort of defamation.").

12 (quoting Amended Complaint at 4) (emphasis in Memo).

A defamatory statement "is one that tends to expose a person to 'public scorn, hatred, contempt, or ridicule,' which, as a consequence, discourages 'others in the community from having a good opinion of, or associating with, that person.'" *Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (citations and some internal quotation marks omitted). A false statement is one "'that is not substantially correct.'" *Id.* (citation omitted). "In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements to the satisfaction of the fact-finder[.]" *Id.* They are as follows, *id.* (citation and some internal quotation marks omitted):

> "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm."

Plaintiff's submissions failed to describe the publication of any defamatory and false statements about plaintiff that are attributable to defendant, except in the most conclusory fashion in the "relief sought" section, and in the allegation that plaintiff has "been personally attacked, harass [sic] and false accuse [sic] by [Sullivan] for years." Amended Complaint at 3. Plaintiff insisted that she has proof "that what the company sent in" to Boyd (presumably, USF's position statement submitted to the EEOC) was "false." Plaintiff's Exh. D at 3. But, plaintiff did not identify any allegedly defamatory statements contained in the USF position statement, nor did she allege that defendant acted with malice in submitting its position statement to Boyd, which would be required to overcome USF's privilege to communicate with the EEOC about plaintiff's employment in relation to the charge. *See, e.g., Lewis v. Forest Pharmaceuticals, Inc.*, 217 F. Supp. 2d 638, 658 (D. Md. 2002) ("Communications arising out of the employer-employee relationship clearly enjoy a qualified privilege.").

12 (quoting Amended Complaint at 4) (emphasis in Memo).

A defamatory statement "is one that tends to expose a person to 'public scorn, hatred, contempt, or ridicule,' which, as a consequence, discourages 'others in the community from having a good opinion of, or associating with, that person.'" *Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (citations and some internal quotation marks omitted). A false statement is one "'that is not substantially correct.'" *Id.* (citation omitted). "In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements to the satisfaction of the fact-finder[.]" *Id.* They are as follows, *id.* (citation and some internal quotation marks omitted):

> "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm."

Plaintiff's submissions failed to describe the publication of any defamatory and false statements about plaintiff that are attributable to defendant, except in the most conclusory fashion in the "relief sought" section, and in the allegation that plaintiff has "been personally attacked, harass [sic] and false accuse [sic] by [Sullivan] for years." Amended Complaint at 3. Plaintiff insisted that she has proof "that what the company sent in" to Boyd (presumably, USF's position statement submitted to the EEOC) was "false." Plaintiff's Exh. D at 3. But, plaintiff did not identify any allegedly defamatory statements contained in the USF position statement, nor did she allege that defendant acted with malice in submitting its position statement to Boyd, which would be required to overcome USF's privilege to communicate with the EEOC about plaintiff's employment in relation to the charge. *See, e.g., Lewis v. Forest Pharmaceuticals, Inc.*, 217 F. Supp. 2d 638, 658 (D. Md. 2002) ("Communications arising out of the employer-employee relationship clearly enjoy a qualified privilege.").

To survive dismissal, plaintiff's suit must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. Plaintiff's Amended Complaint contained the sort of conclusory allegations that are insufficient to "state a claim to relief that is plausible on its face." *Id*. at 570. Accordingly, to the extent the suit asserts a claim of slander or defamation, the claim is dismissed. It follows that I need not address defendant's contention that any slander or defamation claim is preempted by the Labor Management Relations Act ("LMRA"). *See* Memo at 6.

*Failure To State A Claim For Gender Discrimination*

Pursuant to Fed. R. Civ. P. Rule 12(b)(6), defendant urges the Court to "dismiss Plaintiff's gender discrimination claim because Plaintiff failed to plead the requisite elements of such a claim." Memo at 10. In defendant's view, "Plaintiff's gender discrimination claim must fail because she cannot identify an adverse employment action in support of her claim." *Id*. USF concedes that plaintiff "makes vague assertions that she suffered some form of discipline," but argues that "the alleged conduct is not actionable because 'the terms[,] conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from…disciplinary procedures.'" *Id.* (quoting *Von Gunten v. Maryland Dep't of the Environment,* 243 F.3d 858, 866 (4th Cir. 2001)).

"To establish a prima facie case of gender discrimination, a plaintiff must show: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action...; and (4) that similarly-situated employees outside the protected class received more favorable treatment.'" *Gerner v. Cnty. of Chesterfield,* 674 F.3d 264, 266 (4th Cir. 2012) (quoting *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004)).

An adverse employment action is one that "'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (alteration in original) (citation omitted). In *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citation omitted), the Fourth Circuit said: "An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *See also Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999) (noting that adverse employment actions have been found in cases involving, *inter alia*, discharge, demotion, or diminished opportunities for advancement). "In addition, [a plaintiff] 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hoyle,* 650 F.3d at 337 (quoting *Burlington N. and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (internal quotation marks omitted)). Like termination, "suspension without pay can be a materially adverse action." *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 516 n.27 (D. Md. 2011) (citing *Burlington*, 548 U.S. at 72-73).

Plaintiff certainly alleged that she was suspended after voicing concerns about discrimination, and that she was subject to discipline when her male colleagues were not. To be sure, plaintiff's submissions do not describe in any detail the circumstances surrounding her suspension. Moreover, an employee is not entitled to avoid punishment for workplace misconduct. But, like retaliation, discriminatory discipline is actionable under Title VII. *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (setting out the elements for such a claim). It may be that plaintiff's allegations are ultimately proved false, and her suspension

justifiable, but I cannot conclude that she failed to plead that she sustained an adverse employment action.

## Conclusion

For the foregoing reasons, the Court will grant defendant's motion to dismiss as to any claims of harassment or hostile work environment, and slander or defamation. As to the slander/defamation claim, the dismissal is without prejudice. The Court will deny defendant's motion to dismiss as to plaintiff's claim of gender discrimination in violation of Title VII. A separate Order, consistent with this Opinion, follows.


Date: June 12, 2012                           /s/
                                              Ellen Lipton Hollander
                                              United States District Judge