IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EYVONNE ARTIS,

    *Plaintiff,*

    v.

U.S. FOODSERVICE, INC.,

    *Defendant.*

Civil Action No.: ELH-11-3406

**MEMORANDUM OPINION**

Plaintiff Eyvonne Artis, who is self-represented, sued her employer, U.S. Foodservice,

Inc. ("USF"), defendant, alleging that she was discriminated against on the basis of sex, in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

*See* Complaint (ECF 1); Amended Complaint (ECF 10).[1]  Artis avers that she "never had

problem [sic] with management male or female, except for Mrs[.] Sullivan[,] who has a problem

with the female [sic] in the warehouse . . . ."  Amended Complaint, ECF 10 at 2.  According to

Artis, Sullivan "treated the male [sic] different" and "never wrote one up" until after Artis filed

her charge with the EEOC.  *Id.* at 2; *see* Pla. Statement, ECF 1-2 at 3.  Further, plaintiff alleges

that "about 200 males" work in the warehouse, but she is "the only [female] left."  *Id.* at 2-3.

Artis also alleges that she has "been personally attacked, harass [sic] and false accuse [sic] by

this supervisor for years."  Amended Complaint, ECF 10 at 3.  For relief, plaintiff seeks one day's

---

[1] Defendant moved to dismiss the original Complaint, alleging that it did not establish
timeliness.  *See* ECF 7.  I granted the unopposed motion, without prejudice.  *See* ECF 8, 9.
Plaintiff then filed an Amended Complaint, specifying the date on which she received her right-
to-sue letter, establishing timeliness of the suit.  *See* ECF 10.  Thereafter, defendant moved to
dismiss the various claims asserted by plaintiff.  *See* ECF 12, 14.  By Memorandum Opinion
(ECF 16) and Order (ECF 17) entered June 12, 2012, I granted the motion as to claims of
harassment and hostile work environment, as well as defamation.  But, I denied the Motion as to
plaintiff's claim of sex discrimination under Title VII.

back pay, injunctive relief, monetary damages in an unspecified amount, as well as costs and attorney's fees. *Id.* at 4.

At the conclusion of discovery, defendant moved for summary judgment ("Motion," ECF 63), supported by a legal memorandum ("Memo.," ECF 63-1) as well as exhibits.[2] Plaintiff filed an Opposition to the Motion ("Opp.," ECF 67), supported by exhibits,[3] to which defendant replied ("Reply," ECF 69). No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. Because plaintiff is self-represented, her filings have been "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v.*

---

[2] Defendant's exhibits include excerpts from the deposition testimony of Evyonne Artis ("Pla. Dep.," Ex. A, ECF 63-2); the Declaration of Lale Nadine Corley, also known as Nadine Sullivan ("Sullivan Decl.," Ex. B, ECF 63-3); and the Declaration of Kenneth Goins ("Goins Decl.," Ex. C, ECF 63-4). Defendant also attached exhibits used at plaintiff's deposition, which consist of: (1) USF's Employee Disciplinary Report for Artis, dated February 14, 2010 ("Pla. Dep. Ex. 9," Ex. A, ECF 63-2 at 47); (2) an Acknowledgement that Artis received a copy of the Employee Handbook and understood that she was responsible for understanding its contents ("Pla. Dep. Ex. 11," Ex. A, ECF 63-2 at 48); (3) the Charge of Discrimination that Artis filed with the Maryland Commission on Human Relations ("Pla. Dep. Ex. 15," Ex. A, ECF 63-2 at 49); and (4) the EEOC Dismissal and Notice of Rights Issued to Artis ("Pla. Dep. Ex. 16," Ex. A, ECF 63-2 at 50-53).

[3] Plaintiff's exhibits include: (1) an unsworn statement from Thomas Pierce, a list entitled "Witnesses who vouch for me at my workplace," a copy of the February 14, 2010 Employee Disciplinary Report, a copy of plaintiff's Record of Grievance regarding the February 14, 2010 suspension, and plaintiff's handwritten notes (Ex. A, ECF 67-1); (2) a copy of the arbitration decision along with plaintiff's handwritten comments (Ex. B, ECF 67-2); (3) a handwritten statement by Artis, a copy of a February 23, 2009 Employee Disciplinary Report, a copy of plaintiff's Record of Grievance regarding a February 23, 2009 suspension, a copy of an Employee Disciplinary Report that appears to be from January 2009, and a copy of the Record of Grievance that plaintiff filed regarding the January 2009 Employee Disciplinary Report (Ex. C, ECF 67-3); (4) emails regarding the 2009 and 2010 suspensions (Ex. D, ECF 67-4); (5) a copy of the position statement that defendant submitted to the EEOC in response to plaintiff's May 2010 charge, along with plaintiff's handwritten comments (Ex. E, ECF 67-5); (6) defendant's Answer (Ex. F, ECF 67-6); (7) the two declarations submitted by defendant in support of its Motion with plaintiff's annotations (Ex. G, ECF 67-7); (8) plaintiff's Amended Complaint (Ex. H, ECF 67-8); and (9) documents relating to plaintiff's 2009 and 2010 grievances, a copy of EEOC's August 24, 2011 Dismissal and Notice of Right to Sue, plaintiff's handwritten note stating that she sought files from the EEOC, and a copy of the EEOC Intake Questionnaire for the May 2010 charge (Ex. I, ECF 67-9).

*Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).  Nevertheless, for the reasons that follow, I will grant the Motion.

# I.    Factual Background[4]

Plaintiff, a female, began work as a "loader" at USF's Baltimore Division in September 2000.  Pla. Dep. at 26:13-20.  As a loader, plaintiff's job was to load pallets from the warehouse onto trucks in the loading dock.  *Id.* at 27:7-13.  Each loader was assigned to certain empty trucks, which were located at numbered bays.  *See id.* at 27-28.

Nadine Sullivan, a female, became plaintiff's supervisor in 2005.  *Id.* at 31:3-8.  According to Artis, it was the supervisor's job to close the truck door and bay doors of the vehicles for which she was responsible.  *Id.* at 28:2-17.  However, Artis testified that it became the loader's job to close the doors when Sullivan injured her back in 2009.  *Id.*  Nevertheless, Artis claimed that Sullivan continued "to close the doors for male loader[s]."  Pla. Statement, ECF 1-2 at 1.

On February 14, 2010, Sullivan located Artis in the break room and asked her to close the doors at bays 37 and 40.  Pla. Dep. at 43:12-14; Pla. Statement, ECF 1-2 at 1.  Artis responded that she was on her lunch break, Pla. Dep. at 43:14-15, and did not get up to close the doors at that time.  *Id.* at 43:19-21.  On deposition, plaintiff recalled that Sullivan then radioed other

---

[4] Plaintiff appended to her Complaint a six page, handwritten statement ("Pla. Statement," ECF 1-2), expanding on the meager facts included in the form complaints. *See* ECF 1 and ECF 10.  In the prior Memorandum Opinion, I explained that I would consider the attachments appended to the Complaint.  *See Jeffrey M. Brown Assoc., Inc. v. Rockville Ctr. Inc.*, 7 Fed. Appx. 197, 202 (4th Cir. 2001) (noting that a district court should not "consider the *allegations* of the original complaint," but "*may*...consider certain *exhibits* attached to the original complaint that are 'integral to and explicitly relied on in the [amended] complaint,' and whose authenticity is not challenged…") (emphasis and alterations in *Brown*) (citation omitted). The allegations in plaintiff's Statement and Amended Complaint were set forth in detail in ECF 16, and are incorporated herein.  Unless otherwise noted, the facts set forth in this section are uncontroverted, and derive from the parties' exhibits and the statement appended to plaintiff's original Complaint.

employees, known as "jockeys," and said: "Fellas, go to lunch. You'll get those doors when you return."[5]  *Id.* at 43:16-18.

After lunch, Artis went back to the loading dock.  Pla. Dep. at 44:2; Pla. Statement, ECF 1-2 at 2.  Rather than closing the doors at bays 37 and 40, plaintiff began loading the truck at bay 38.  Pla. Dep. at 44:6-8; Pla. Statement, ECF 1-2 at 2.  Sullivan arrived at the loading dock and once again asked plaintiff to close the doors at bays 37 and 40.  Pla. Dep. at 44:15-16, 46:16-21; Pla. Statement, ECF 1-2 at 2.  In response to Sullivan's second request, plaintiff recalled saying: "Nadine shorts[6] is [sic] coming up. I just put them on 37, and you told the jockeys to go to lunch, and they'll be gone to lunch for a whole hour."  Pla. Dep. at 44:16-19; *see also* Pla. Statement, ECF 1-2 at 2.  According to plaintiff, Sullivan responded: "They said they're not going to lunch until they get these doors."  Pla. Dep. at 44:21-22.  When Artis asked Sullivan to clarify this statement, Sullivan apparently stated: "They said they're not going until they get these doors. Now I need these doors closed."  *Id.* at 44:22 – 45:1-2.

Sullivan then contacted Kenneth Goins, the Night Warehouse Manager, and asked him to come to the loading dock.  *Id.* at 47:2.  Upon hearing Sullivan call Goins, plaintiff closed the door at bay 37.  *Id.* at 45:8-10, 47:5-6; *see* Sullivan Decl. ¶ 3.  Artis was in the process of closing

---

[5] In the written statement plaintiff appended to her Complaint, Artis's account varied slightly.  There, she stated that Sullivan told the jockeys "to go to lunch and move the truck when they return."  Pla. Statement, ECF 1-2 at 1.

[6] Based on the record, it is unclear what is meant by "shorts."  However, plaintiff explained during her deposition that, at some point after the pallets are loaded onto the truck, employees known as "selectors" are tasked with putting "shorts on the pallets . . . ."  Pla. Dep. at 27:11-21.

the door at bay 40 when Goins arrived at the loading dock.  Pla. Dep. at 45:10-11; *see* Goins Decl. at ¶ 4.[7]

Plaintiff recalled in her written statement that, at this point, she asked Sullivan: "[W]hy do you come down and close the guy[s' doors] when they are not here and you wont [sic] close mine."  Pla. Statement, ECF 1-2 at 2.  According to plaintiff, Sullivan asserted again that "it isn't her job."  *Id.*

On deposition, Artis recounted that she complained to Goins that Sullivan would close the doors of the male employees, but would not close her doors.  Pla. Dep. at 45:15-18. According to Artis, Sullivan once again replied, "It's not my job."  *Id.* at 45:18-20.  Plaintiff recalled that she then pointed out that Sullivan had told the jockeys to go to lunch, and the jockeys replied that they were not going until they "got" doors 37 and 40.  *Id.* at 45:22 – 46:1-2. At this point, Sullivan left the dock.  *Id.* at 46:4.

Sullivan went to the "cooler office" after the incident at the loading dock.  Sullivan Decl. ¶ 4.  According to Sullivan, she saw Artis "standing about ten feet away, leaning on the handle of her pallet jack and looking at [her] through the window."  *Id.* at ¶ 4.  Sullivan also recounted that she later saw plaintiff coasting back and forth on a pallet jack outside of the office.  *Id.* at ¶ 4. According to Sullivan, when she left the cooler office, plaintiff rode by on the pallet jack, leaned over, and said to Sullivan, "your ass is mine."  *Id.* at ¶ 4; *see* Goins Decl. at ¶ 5.  Sullivan reported the threat to Goins.  Sullivan Decl. ¶ 6; Goins Decl. at ¶ 5.  Plaintiff denies that she

---

[7] Plaintiff has provided varying accounts with respect to the point at which she closed doors 37 and 40 after Sullivan arrived at the loading dock. Plaintiff testified at her deposition that she was "closing door 40 when [Goins] came to the dock." Pla. Dep. at 45:10-11. But, plaintiff has also insisted that the "doors were closed when Mr. Goins got to the dock 37 door wasn't lock[ed]." Ex. E, ECF 67-5 at 4. In any event, these discrepancies are not material.

threatened Sullivan, and also appears to deny that she coasted back and forth on the pallet jack outside of her office. *See* Opp., ECF 67 at 3, 5; Ex. E, ECF 67-5 at 4; Ex. G, ECF 67-7 at 2,4.

That evening, Goins met with plaintiff and Union Steward Joe Schwabline regarding what had transpired between Artis and Sullivan. Goins Decl. at ¶ 6. According to Goins, Artis did not deny that she had a disagreement with Sullivan over closing the truck doors and that she did not shut the truck doors until after Sullivan twice told her to do so and called Goins to the dock. *Id.* at ¶ 7. However, Artis denied that she had threatened Sullivan. *Id.* Goins recalled that Artis claimed that she was singing while driving around on the pallet jack. *Id.* Plaintiff, on the other hand, maintains that she responded: "No. I haven't seen her," when questioned during the meeting about whether she had threatened Sullivan. Ex. E, ECF 67-5 at 4; *see* Ex. G, ECF 67-7 at 5.

That same day, Goins suspended Artis, pending investigation, for improper conduct, violation of company policy/work rules, abusive language to employees/customers/supervisor, and creating a hostile work environment/threats. Pla. Dep. at 56:1-7; Pla. Dep. Ex. 9; *see* Goins Decl. at ¶ 7. On the Employee Disciplinary Report, Goins included the following remarks: "On 2/14, Eyvonne created a hostile work environment for a suspension. As she was passing N. Sullivan, Eyvonne said, 'Your ass is mine.' This comes after the two had a disagreement on the dry dock. This type of behavior won't be tolerated. As a result, Ms. Artis will be suspended pending investigation." Pla. Dep. Ex. 9. In connection with Goins's investigation, he reviewed Artis's personnel file, which revealed that she was disciplined in early 2009 for acting disrespectfully towards Sullivan and threatening her on another occasion. Goins Decl. at ¶ 8.

On or about February 16, 2010,[8] Goins met with plaintiff, along with Schwabline and a representative from human resources. Goins Decl. at ¶ 9. As in the previous meeting, plaintiff did not refute that she had a disagreement with Sullivan about closing the truck doors, or that she failed to shut the truck doors until Sullivan twice directed her to do so and called Goins to the dock. *Id.* at ¶ 9. Based on his review of the incident, Goins concluded that Artis did say "'your ass is mine' while riding by [Sullivan] on her pallet jack on February 14, 2010." *Id.* at ¶ 10. Goins averred: "In light of all of this, I decided to suspend Eyvonne for five days regarding her conduct on February 14, 2010." *Id.* at ¶ 11.

Through her union, Artis filed a grievance regarding the five-day unpaid suspension, Ex. A, 67-1 at 4, and the grievance went through arbitration. Pla. Dep. at 64:21-22 – 65:1-4. The arbitrator credited Sullivan's version of events. Ex. B, ECF 67-2 at 10. However, the arbitrator concluded that Goins had improperly relied on the 2009 misconduct because, under the terms of the collective bargaining agreement, it could not be considered in issuing discipline with respect to the February 2010 incident. Ex. B, ECF 67-2 at 11-12. Therefore, the arbitrator reduced the unpaid suspension to one day. Pla. Dep. at 65:5-8; Ex. B, ECF 67-2 at 12.

On May 12, 2010, plaintiff filed a Charge of Discrimination with the Maryland Commission on Human Relations ("MCHR"). Pla. Dep. Ex. 15, ECF 63-2 at 49.[9] In her charge, Artis alleged, *inter alia*: "Nadine Sullivan[] treats the male employees more favorably and I have had numerous disputes with her as a result of that fact." She also maintained that Goins

---

[8] Plaintiff disputes the date that the second meeting with Goins took place. In plaintiff's Ex. E, ECF 67-5 at 4, Artis contends that the second meeting took place only one day after the threat on February 14, 2010. Elsewhere, she appears to assert that the second meeting occurred on February 14, 2010. *See* Ex. G, ECF 67-7 at 5. In any event, the discrepancy as to the date of the second meeting is not material.

[9] In 2011, the Maryland Commission on Human Relations became the Maryland Commission on Civil Rights ("MCCR"). *See* Ch. 580, Acts of 2011.

suspended her "following a related incident where males were given preferential treatment by Sullivan and she accused [plaintiff] of creating a hostile work environment." *Id*. The Equal Employment Opportunities Commission ("EEOC")[10] issued Artis a Dismissal and Notice of Right To Sue on August 24, 2011. Pla. Dep. Ex. 16, ECF 63-2 at 50. Plaintiff timely filed suit in this Court.

At her deposition, plaintiff recalled two incidents of misconduct by male employees to support her allegations of discrimination based on gender. First, plaintiff recounted an incident involving Sullivan and Eugene Harris, known as "Bubbles." Pla. Dep. at 142:14-16. Although it is not entirely clear, it seems that Sullivan supervised Harris, who held a position as a "selector." *See id.* at 142:18-21 – 143:16-19. Plaintiff said that she witnessed Sullivan and Bubbles standing face-to-face shouting at each other, and Sullivan was pointing her finger at him. *Id.* at 142:9-22 – 143:1-10. Plaintiff was uncertain of the date, but she estimated 2010 or 2011. *Id*. at 144:14-17. But, she recalled that the incident "was something about what he didn't do at work." *Id.* at 144:1-2. Yet, according to plaintiff, no disciplinary action was taken against Bubbles. *Id.* at 143:18-19.

The second incident involved a man identified only as "Hank," who was supervised by Sullivan and held a position as a "receiver." *Id.* at 154:7, 157:17-20. According to plaintiff, in

---

[10] A deferral jurisdiction is a state that has a law prohibiting employment discrimination on the same bases covered by the federal statutes, and authorizing a state or local agency to grant or seek relief from such discrimination. *See* 42 U.S.C. § 2000e–5(c), (d); *see, e.g.*, *Edelman v. Lynchburg Coll.,* 300 F.3d 400, 404 & n.3 (4th Cir. 2002); *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011). Maryland is a deferral state under Title VII; the Maryland Commission on Civil Rights, formerly known as the Maryland Commission on Human Relations, is the applicable state enforcement agency. 29 C.F.R. § 1601.74 (listing qualifying state enforcement agencies); *Prelich*, 813 F. Supp. 2d at 661; *see also EEOC v. R & R Ventures*, 244 F.3d 334, 338 n.* (4th Cir. 2001). Both the MCHR and the MCCR have enjoyed a work-sharing agreement with the EEOC, "by which a claim filed before one commission is effectively filed before both." *Valderrama v. Honeywell Tech. Solutions, Inc.,* 473 F. Supp. 2d 658, 662 n.2 (D. Md. 2007); *see E.E.O.C. v. Techalloy Maryland, Inc.*, 894 F.2d 676, 677-78 (4th Cir. 1990).

March 2011, *id.* at 154:5-6, Sullivan threw out Hank's lunch when she was cleaning the refrigerator. *Id.* at 154:11-15. In response, "he verbally cursed her out." *Id.* at 154:14-15. Plaintiff contends that Hank was "suspended for the day with pay," and was required "to come back and apologize to Ms. Sullivan and that was it." *Id.* at 154:17-19. Plaintiff admitted that she did not witness the interaction between Hank and Sullivan, but recalled that "everyone talked about it," *id.* at 154:20-22, and she learned about Hank's discipline through a shop steward. *Id.* at 155:15-17.

Notably, at her deposition, plaintiff was unable to identify any male employees who had threatened Sullivan. And, plaintiff admitted in her Opposition: "I have never hear [sic] anyone threat [sic] Ms. Sullivan." ECF 67 at 5.

Additional facts are included in the Discussion.

## Standard of Review

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In response to a motion for summary judgment, the non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U. S. at 247-48 (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

In considering a summary judgment motion, a judge must determine "'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871) (emphasis in *Munson*). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment. *Id.* at 248. Conversely, if the evidence on the record would not support a verdict for the nonmoving party, it is "the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial" and to grant summary judgment for the moving party. *Drewitt v. Pratt*, 999 F.2d 774, 778 (4th Cir. 1993) (quotation marks and

citations omitted); *see also Matsushita*, *supra*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotation marks omitted)).

## Discussion

As noted, plaintiff claims that she was the victim of sex discrimination, in violation of Title VII. In particular, plaintiff appears to allege that she was subjected to disparate and discriminatory discipline on the basis of gender with regard to her 2010 suspension. *See* Pla. Statement, ECF 1-2 at 3 ("Mrs. Sulli[v]an never wrote up a male in the company if she has it was after I file[d] charge [sic] at the EEOC."); Amended Complaint, ECF 10 at 2 ("She treated the male diff[e]rent never wrote one up until after I file[d] chargez [sic]."). In addition, plaintiff has cited several other occasions for which she believes defendant discriminated against her on the basis of gender. Plaintiff also seeks to establish a number of new claims in her Opposition to defendant's motion which, for the reasons discussed below, are not properly before this Court.

1. Employment discrimination – methods of proof

Title VII prohibits an employer from, *inter alia*, discharging or discriminating against "any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Moreover, as amended by the Civil Rights Act of 1991, Title VII expressly provides for "mixed-motive" liability, stating: "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m).

In general, there are "two avenues" at trial by which a plaintiff may prove that an adverse employment action amounts to unlawful employment discrimination. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). The first is to offer "'direct or indirect'" evidence of discrimination, under "'ordinary principles of proof.'" *Burns v. AAF– McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted). "To avoid summary judgment" when proceeding under ordinary principles of proof, "'the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (internal citations and quotation marks omitted; alteration in original).

The second avenue available to the plaintiff at trial is to follow the burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted).[11]

Absent direct evidence of discrimination, the plaintiff at trial must first establish, by a preponderance of the evidence, a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). Although the precise formulation of the required *prima facie* showing will vary in "different factual situations," *McDonnell Douglas*, 411

---

[11] *McDonnell Douglas* involved a claim of racial discrimination in hiring under Title VII of the Civil Rights Act of 1964. However, the burden-shifting methodology it endorsed has been adapted for use in other statutory contexts, including Title VII claims of sex discrimination. *See, e.g., Young v. United Parcel Service, Inc.*, 707 F.3d 437, 445-46 (4th Cir. 2013) (applying *McDonnell Douglas* framework to Title VII sex discrimination claim); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 50-52 & n.3 (2003) (applying *McDonnell Douglas* framework in employment discrimination case under Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*); *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc) (applying *McDonnell Douglas* framework to employee's claim of age discrimination).

U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an employee who was qualified for employment, "under circumstances which give rise to an inference of unlawful discrimination," *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). For example, the Fourth Circuit has explained that, to establish a *prima facie* case of gender discrimination, "a plaintiff must show: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action...; and (4) that similarly-situated employees outside the protected class received more favorable treatment.'" *Gerner v. Cnty. of Chesterfield,* 674 F.3d 264, 266 (4th Cir. 2012) (quoting *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004)).

If the plaintiff establishes a *prima facie* case, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510–11. Stated another way, if the employer produces evidence that could persuade a fact finder that it had a legitimate, non-discriminatory reason for its actions, "the defendant has done everything that would be required of [it] if the plaintiff had properly made out a *prima facie* case," and therefore, "whether the plaintiff really did so is no longer relevant." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983).

When the defendant meets his or its burden of production, the plaintiff must then prove, by a preponderance of evidence, "that the proffered reason was not the true reason for the

employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516–20; *Adams v. Trustees of Univ. of North Carolina–Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [Plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff" to prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n. 2 (4th Cir. 1989) (citation omitted).

To be sure, the relevance of the *McDonnell Douglas* scheme outside of the trial context is limited. The Fourth Circuit has admonished district courts at the summary judgment stage to "'resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of the ultimate question of discrimination *vel non*.'" *Merritt*, 601 F.3d at 295 (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)) (alterations in *Merritt*; internal quotation marks omitted). Further, the Fourth Circuit has observed that, "[n]otwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of 'the ultimate question of discrimination *vel non*.'" *Merritt*, *supra*, 601 F.3d at 294–95 (citation omitted). Nevertheless, the Court has referred to the *McDonald Douglas* proof scheme in analyzing the propriety of an award of summary judgment. *See*, *e.g.*, *Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510 (4th Cir. 2006).

2.  <u>Discriminatory discipline based upon gender</u>

As noted, plaintiff alleges that she was subjected to discrimination on the basis of sex with respect to her 2010 suspension. Plaintiff has not proffered any direct or indirect evidence of discrimination. Accordingly, plaintiff's allegations must be considered in light of the framework set forth in *McDonnell Douglas* and its progeny.

To establish a *prima facie* case of discrimination based on the enforcement of employee disciplinary measures, an employee must show that "(1) that he [or she] is a member of the class protected by Title VII, (2) that the prohibited conduct in which he [or she] engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him [or her] were more severe than those enforced against those other employees." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993); *see also Moore v. City of Charlotte,* 754 F.2d 1100, 1105-06 (4th Cir. 1985) (adapting *McDonnell Douglas* scheme to the employee discipline context). If the plaintiff establishes a *prima facie* case, "the burden of going forward shifts to the employer, who must articulate a non-discriminatory reason for the difference in disciplinary enforcement." *Cook*, 988 F.2d at 511; *see also Lauture v. Saint Agnes Hosp.*, 429 Fed. Appx. 300, 305 (4th Cir. 2011) (O'Connor, J., sitting by designation).

With regard to the second and third elements of a *prima facie* case, a plaintiff can meet his or her burden by producing evidence of misconduct of other employees that is sufficiently similar to her own misconduct to permit a sound comparison between the discipline imposed in her case and in the prior cases. *See Burdine*, 450 U.S. at 258; *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). Although a "comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of

circumstances," *Cook*, 988 F.2d at 511, "the similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington,* 545 F.3d 260, 265 (4th Cir. 2008). A sufficient showing would include evidence that the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *accord Haywood v. Locke,* 387 Fed. Appx. 355, 359 (4th Cir. 2010); *see also Popo v. Giant Foods LLC*, 675 F. Supp. 2d 583, 589 (D. Md. 2009) (Quarles, J.).

Defendant advances several arguments in response to plaintiff's allegation of discriminatory discipline. First, defendant asserts: "Plaintiff cannot establish a *prima facie* case of discriminatory discipline as a matter of law because she had not identified any similarly situated male employees who were found to have engaged in the same conduct for which she was disciplined and treated less severely." Memo., ECF 63-1 at 9. Second, defendant argues that, even if plaintiff established a *prima facie* case of gender discrimination, "[d]efendant has articulated a legitimate, nondiscriminatory reason for its action." *Id.* at 10. Third, defendant maintains that "[p]laintiff cannot show the stated reason for her suspension was a pretext for discrimination*." Id.* at 12.

There is no dispute that Artis, as a female, is a member of a protected class. However, plaintiff failed to establish a *prima facie* case of discrimination because she has not shown that other employees engaged in similarly serious conduct and that plaintiff was punished more severely than they were.

For a number of reasons, Hank and Harris are not viable comparators. Plaintiff does not claim that either of the purported comparators threatened Sullivan. Nor did they twice refuse to follow Sullivan's directions and engage in an argument with her prior to the alleged altercations. Moreover, unlike Artis, there is no indication that Hank or Harris had a history of misconduct.[12] *See Sook Yoon v. Sebelius*, 481 Fed. Appx. 848, 850 (4th Cir. 2012) (considering plaintiff's history of misconduct as a factor in determining comparability). To be sure, "precise equivalence in culpability between employees is not the ultimate question." *Moore,* 754 F.2d at 1107 (quoting *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 283 n.11 (1976)). However, comparing the incidents "in light of the harm caused or threatened to the victim or society, and the culpability of the offender," *id.* at 1107, I readily conclude that plaintiff has failed to establish that the purported comparators engaged in conduct of similar seriousness. *See Sook Yoon*, 481 Fed. Appx. at 850 (affirming summary judgment where plaintiff "failed to demonstrate that the conduct of any of [the purported comparators] was comparably serious"); *see also Cupples v. AmSan, LLC*, 282 Fed. Appx. 205, 210 (4th Cir. 2008) (finding that plaintiff failed to present a *prima facie* case where "[plaintiff] did provide examples of discipline or the lack of discipline of other employees, [but] as to none did he supply the necessary details that made those other incidents comparable and therefore relevant").

---

[12] I recognize that, under the terms of the collective bargaining agreement, an arbitrator later determined that defendant improperly relied on plaintiff's prior misconduct. Ex. B, ECF 67-2 at 11-12. However, this does not negate the employer's honest reliance on the prior misconduct, a non-discriminatory factor, in imposing discipline. *Cf. Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001) ("As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.").

Moreover, plaintiff proffered mere conjecture, but no evidence, that the incident involving Hank transpired as she alleges. *See Mackey*, 360 F.3d at 470 ("An employee's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case."). Similarly, although plaintiff testified that she witnessed Harris shouting at Sullivan, she submitted no evidence to demonstrate that he was not disciplined. "Unsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Liberty Lobby*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

To be sure, the burden is on the moving party to establish its entitlement to summary judgment. But, "the plaintiff is not thereby relieved of his [or her] own burden of producing in turn evidence that would support a jury verdict." *Liberty Lobby*, 477 U.S. at 256. If the nonmoving party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Holland*, *supra*, 487 F.3d at 213 (quoting *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In my view, the evidence presented here, construed in the light most favorable to Artis, would not permit a reasonable jury to infer that Artis was disciplined more harshly than similarly situated male employees.

Even assuming plaintiff could present a *prima facie* case, defendant has met its burden of presenting a valid, non-discriminatory reason for suspending plaintiff. Goins believed that plaintiff had an argument with Sullivan, twice refused to comply with Sullivan's orders, and then threatened Sullivan. *See* Goins Decl. at ¶ 10-11; Pla. Dep. Ex. 9; *cf. Holland*, 487 F.3d at 214 (defendant met its burden of establishing a legitimate, non-discriminatory reason for the termination where defendant produced affidavits and testimony demonstrating that plaintiff was fired because the decision-maker believed that plaintiff made the threats). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, (2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993)). Plaintiff may disagree with the decision that resulted in her suspension, but this Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks and citation omitted).

Because defendant has met its burden of proffering a legitimate, non-discriminatory reason for the suspension, plaintiff must show that defendant's explanation for her suspension is pretextual, and that she was the victim of intentional discrimination. This plaintiff has failed to do.

Defendant contends that plaintiff cannot show pretext. Although plaintiff accused Sullivan of discriminatory animus, she admitted at her deposition that Goins, not Sullivan, made the decision to suspend her. Memo., ECF 63-1 at 12. At her deposition, plaintiff conceded that Goins made the decision to suspend her, Pla. Dep. 160:14-16, 161:3-6, and that Sullivan was the only person who discriminated against her. *Id.* at 96:22 – 97:1-12. However, plaintiff

maintained that Goins made the decision to suspend her because Sullivan "insisted" that plaintiff be disciplined.  *Id.* at 160:14-21.

In *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 288 (4th Cir. 2004), the Fourth Circuit explained that the person allegedly acting pursuant to a discriminatory animus need not be the "formal decisionmaker" in order to attach liability to an employer for an adverse employment action.  In sum, the *Hill* Court ruled that Title VII does not allow a "biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decision maker simply because he had a substantial influence on the ultimate decision or because he has played . . . even a significant [role] in the adverse employment decision."  *Id.* at 291.  Thus, "[t]o survive summary judgment," the plaintiff "must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer."  *Id.*

More recently, in *Staub v. Proctor Hospital,* ____ U.S. ____, 131 S. Ct. 1186, 1189 (2011), the Supreme Court addressed the circumstances under which the Uniformed Services Employment and Reemployment Rights Act ("USERRA") permits holding an employer "liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision."  The Supreme Court held that "if a supervisor performs an act motivated by . . . animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable," even if the ultimate decision maker as to the adverse action did not have a discriminatory animus.  *Id.* at 1194.

In the recent case of *Young v. United Parcel Service, Inc.*, 707 F.3d 437 (4th Cir. 2013), the Fourth Circuit considered *Staub* and indicated approval of *Staub's* application to the Title VII context. And, in *Vicino v. Maryland*, -- F. Supp. 2d --, 2013 WL 5973154, at *7 (D. Md. Nov. 8, 2013), Judge Bredar explained: "In view of the Fourth Circuit's application of *Staub* to Title VII cases in *Young*, a complaining party may demonstrate that discrimination motivated an adverse employment action if (1) the individual with the discriminatory animus 'possessed such authority as to be viewed as the one principally responsible for the [adverse employment] decision or the actual decisionmaker for the employer,' under *Hill;* or (2) the subordinate with discriminatory animus *intended* to influence the person with decisionmaking authority and was a proximate cause of the ultimate adverse employment action, under *Staub*." *Id.* at *7 (emphasis in original) (citing *Young*, 707 F.3d at 449); *accord Ridgell v. Colvin,* No. DKC–10–3280, 2013 WL 952253, *12 (D. Md. Mar. 11, 2013)).

Here, plaintiff has failed to present evidence from which a reasonable jury could find that Sullivan "possessed such authority as to be viewed as the one principally responsible for the [adverse employment] decision or the actual decisionmaker for the employer." Indeed, the Employee Disciplinary Report reflects that Goins made the decision to suspend plaintiff pending investigation. Pla. Dep. Ex. 9. Likewise, Goins confirmed in his affidavit that "[he] decided to suspend Eyvonne pending investigation of the incident." Goins Decl. at ¶ 7. And, Goins attested that he subsequently "decided to suspend Eyvonne for five days regarding her conduct on February 14." *Id.* at ¶ 11. Plaintiff has adduced no evidence to suggest this is inaccurate.

Arguably, there is a dispute as to whether Sullivan "intended to influence the person with decisionmaking authority and was a proximate cause of the ultimate adverse employment action." But, even if plaintiff's assertion is credited, there is no evidence from which a

reasonable jury could conclude that Sullivan was motivated by gender animus when she allegedly "insisted" upon plaintiff's suspension. Nor is there is evidence from which a reasonable jury could conclude that Sullivan proximately caused the decision to suspend plaintiff. The Supreme Court explained that proximate causation requires "only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only those 'links that are too remote, purely contingent, or indirect.'" *Staub,* 131 S.Ct. at 1192 (quoting *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (2010)). Although Goins considered Sullivan's description of Artis's actions on February 14, 2010, there is no evidence that Sullivan had any input regarding the ultimate decision as to the discipline imposed on Artis.

And, it is salient that Ms. Sullivan is a female. "The fact that the decision makers were of the same protected class suggests no discriminatory motivation." *Desmesne v. Montgomery Cty. Gov., et al.*, 63 F. Supp. 2d 678, 683 (D. Md. 1999). *See, e.g.*, *Orgain v. City of Salisbury*, 305 Fed. Appx. 90, 103 (4th Cir. 2008) (citations omitted) ("[T]he fact that a decision-maker is a member of the same protected class as the plaintiff . . . substantially weakens any inference of discrimination."); *Bryan v. Lucent Techs., Inc.*, 307 F. Supp. 2d 726, 739 n.10 (D. Md. 2004) (Davis, J.) (noting that, since the supervisor was "a member of the same protected class" as plaintiff, his actions "do not carry probative value as proof of intentional gender discrimination"), *aff'd per curiam*, 112 Fed. Appx. 285 (4th Cir. 2004). Sullivan may dislike plaintiff, but that does not constitute a bias based on sex.

Moreover, plaintiff has failed to offer any evidence probative of pretext. Of import here, Artis does not deny that she had a disagreement with Sullivan over closing the doors and that she did not close the truck doors after being asked to do so twice by Sullivan. But, in an apparent attempt to demonstrate discriminatory intent, plaintiff repeatedly argues that she did not threaten

Sullivan. *See, e.g.*, Opp., ECF 67 at 3-4, Exh. B, ECF 67-2. This argument is unavailing. "The relevant actor for purposes of determining discriminatory intent is the decision maker," *Klump v. Mayor & City Council of Baltimore*, JFM 09-CV-1157, 2010 WL 2384274, at *4 (D. Md. June 8, 2010) (citation omitted), and nothing in the record supports the inference that Goins did not believe the veracity of Sullivan's claim that Artis had threatened her. "A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination." *Holder v. City of Raleigh*, 867 F.2d 823, 829. *See Holland*, 487 F.3d at 215 (plaintiff failed to show pretext where, "[a]side from his denials as to the threats . . . nothing in the record support[ed] an inference that [the decision maker's] explanation was prextual" or that the decision-maker did not believe that plaintiff threatened another employee when the decision-maker chose to fire plaintiff); *Tinsley*, 155 F.3d at 444 (affirming summary judgment where plaintiff presented "no evidence that the events recounted in the [decision-maker's] affidavit [were] untrue or that retaliation was the true reason for [plaintiff's] firing," and explaining that the "uncontested evidence establishe[d] that [the decision-maker] honestly believed that [plaintiff] deserved to be discharged").

Plaintiff's conclusory allegations of gender animus are insufficient to support a finding that defendant's proffered reason for Artis's suspension was pretextual. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) ("'[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.'" (quoting *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir.1989)); *see also Mungro v. Giant Food, Inc.*, 187 F. Supp. 2d 518, 523 (D. Md. 2002) (Motz, J.) (finding that plaintiff's claim could not survive summary judgment where he "offered no more than his disagreement with [defendant's] decision to fire him and his subjective

belief that [it] was motivated by discrimination"). Accordingly, plaintiff's discriminatory discipline claim cannot survive summary judgment.

3. Gender discrimination – other claims

At her deposition, plaintiff was asked to list each instance of gender discrimination allegedly committed by Sullivan. Pla. Dep. at 97:13-17. Plaintiff contended that (1) Sullivan closed the doors for the males, but would not close the doors for her; (2) Sullivan would not summon the males while they were on break to close the doors, and would close the doors for them, but not for plaintiff; and (3) "the male employees could tell [Sullivan] that they didn't want to do something and that was okay." *Id.* at 97:18-19, 122:7-22 – 123:1. In her written statement, plaintiff also cited a laundry list of occasions, in addition to her suspension, for which defendant allegedly discriminated against her on the basis of gender.

The first alleged incident occurred on September 13, 2011, when plaintiff saw another loader, identified only as "Spiro," unloading a truck with four pallets left to unload. Pla. Statement, ECF 1-2 at 3. Sullivan stopped plaintiff and asked: "[A]re you going to help Spiro unload the truck[?]" At that point, plaintiff assisted Spiro in removing the two pallets that remained on the truck. *Id.* She then "punched out" with the other employees, but before she could leave, was called to the office of Robert Jellison, where Sullivan was waiting.[13] *Id.* at 4. Jellison asked Artis to sit down, but she responded that she was "off the clock" and wanted a "shop steward" present at the meeting "because Mrs. Sullivan isn't going to start lie [sic] on me again." *Id.* Nonetheless, the meeting appears to have continued, and plaintiff explained that she was criticized for working too slowly, a claim she disputed.

---

[13] Artis often spells Jellison's last name as "Jellion." Based on plaintiff's submissions, I referred to Jellison as "Jellion" in the prior Memorandum Opinion. *See* ECF 16. However, the parties' subsequent submissions reveal that "Jellison" is the correct spelling.

Another incident allegedly occurred on October 19, 2011. *Id.* On that day, Dave Farmer[14] told plaintiff that she "had to use the blue pallets." *Id.* According to plaintiff, male employees were using the brown pallets, not the blue pallets. *Id.* at 5. She alleged that Sullivan witnessed Spiro and another employee, referred to as "George," using the brown pallets, but "said nothing." *Id.* But, when plaintiff "start[ed] using the brown pallets," Sullivan "came down and said Eyvonne you have to use the blue pallets and you to[o] George." *Id.*

A third incident occurred on November 10, 2011, when plaintiff was "out back smoking," here she was joined by two male employees. *Id.* Sullivan came out and began to "talk with one of the guys." *Id.* Eventually, Sullivan went back inside, having "said nothing" about the smoking. *Id.* Thereafter, Goins "came out and said no smoking out here." *Id.* Plaintiff asked "why Mrs. Sullivan didn't say anything when she came out." *Id.*

And, plaintiff asserted that on November 9, 2011, she was informed that John Marven,[15] a USF employee, had been told by Sullivan to inform human resources that Artis had threatened him.[16] *Id.* at 5-6. Artis insisted that she never threatened Marven, and claimed that Marven denied the incident when asked about it by Goins. *Id.* Shortly thereafter, on November 14, 2011, plaintiff was instructed to report to human resources, where she was told that her supervisors had described Artis as "question[ing] everything they tell [her] to do," which she insisted "isn't true." *Id.* Plaintiff used the opportunity to tell a human resources employee, Regina Lindsey, "how they been [sic] treating [her]." *Id.*; *see also* Pla. Exh. A., ECF 67-1 at 5.

---

[14] Based on plaintiff's Opposition, it appears that Farmer serves in a supervisory capacity. *See* ECF 67 at 11.

[15] It is unclear whether the name is spelled "Marven" or "Marvin." *Compare* Reply, ECF 63-1 at 16 *with* Pla. Statement, ECF 1-2 at 6. I will use "Marven," for the sake of consistency with the spelling set forth in my prior Memorandum Opinion, ECF 16.

[16] Plaintiff actually wrote "treat him." *Id.* at 6. Context suggests this was a spelling error.

"In order to maintain a valid claim of . . . gender discrimination, an individual must have suffered an adverse employment decision." *Jyachosky v. Winter*, 343 Fed. Appx. 871, 877 (4th Cir. 2009). An adverse employment action is one that "'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland*, 487 F.3d at 219 (alteration in original) (citation omitted). In *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citation omitted), the Fourth Circuit said: "An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *See also Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999) (noting that adverse employment actions have been found in cases involving, *inter alia*, discharge, demotion, or diminished opportunities for advancement). "'Although conduct short of ultimate employment decisions can constitute adverse employment action, there still must be a tangible effect on the terms and conditions of employment.'" *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011) (Chasanow, J.) (quoting *Geist v. Gill/Kardash P'ship,* 671 F.Supp.2d 729, 737 n.6 (D. Md. 2009)), *aff'd*, 465 Fed. Appx. 274 (4th Cir. 2012). Moreover, "'not everything that makes an employee unhappy is an actionable adverse action.'" *Settle v. Baltimore Cnty*., 34 F. Supp. 2d 969, 989 (D. Md. 1999) (Davis, J.) (quoting *Montandon v. Farmland Indus., Inc.,* 116 F.3d 355, 359 (8th Cir. 1997)), *aff'd sub nom. Settle v. Baltimore Cnty. Police Dep't*, 203 F.3d 822 (4th Cir. 2000) *and aff'd sub nom. Harris v. Earp*, 203 F.3d 820 (4th Cir. 2000).

Even assuming the truth of Artis's allegations, they would not permit a reasonable juror to find employment discrimination on the basis of sex. These claims fail, as a matter of law, because plaintiff has not established that she suffered a single adverse employment action in connection with these occurrences.

First, Jellison's mere criticism of plaintiff for working too slowly was not an adverse action, as it did not result in a change in the terms and conditions of employment. *See Jones v. Spherion Atl. Enter., LLC*, 493 Fed. Appx. 6, 9 (11th Cir. 2012) ("[C]riticisms of an employee's performance, whether written or oral, which do not lead to tangible job consequences, are generally not sufficient to constitute a violation of Title VII." (citing *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1241 (11th Cir. 2001)); *Kline v. Berry*, 404 Fed. Appx. 505, 506 (D.C. Cir. 2010) (email from plaintiff's boss criticizing her work did not constitute an adverse employment action); *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011) (concluding, in the context of a retaliation claim, that plaintiff's allegation that he was "'criticized' for contacting his State Delegate" was not a materially adverse action).

Likewise, Artis cannot show that she suffered an adverse employment action when Goins told her and two other employees not to smoke "out back," or when she was instructed to report to human resources and told that supervisors complained that Artis was "question[ing] everything they tell [her] to do." Such incidents are akin to a reprimand, and reprimands are generally not considered adverse employment actions. *See Thorn*, 766 F. Supp. 2d at 598.

"Reprimands, whether oral or written, do not *per se* significantly affect the terms or conditions of employment." *Lewis v. Forest Pharmaceuticals, Inc.,* 217 F. Supp. 2d 638, 648 (D. Md. 2002) (citations omitted). Rather, a reprimand is a "tangible employment action" when "evidence shows that a reprimand not only bruises an employee's ego or reputation, but also works a real, rather than speculative, employment injury." *Id.* There is no claim here that the smoking incident or the meeting with human resources had any tangible effect on the terms and conditions of plaintiff's employment. And, "[w]ithout such an effect, there is no adverse employment action." *Thorn*, *supra*, 766 F. Supp. 2d at 599; *see also Newman v. Giant Food,*

*Inc.*, 187 F. Supp. 2d 524, 529 (D. Md. 2002) (plaintiff could not establish that the verbal warning or counseling letter he received for arriving late was an adverse action "without evidence that the warning could lead to further disciplinary action, such as termination"), *aff'd sub nom. Skipper v. Giant Food Inc*., 68 Fed. Appx. 393 (4th Cir. 2003).

Nor has plaintiff established that she suffered an adverse employment action with regard to the alleged threat of Marven. In support of her Opposition, plaintiff contends that Marven would sign a statement that "Ms. Sullivan wanted him to go to HR and she will be his witness that she heard me, Evyonne Artis threatening him." Ex. A, 67-1 at 2. However, plaintiff does not allege (or produce evidence) that any employment consequences resulted to her. Indeed, plaintiff acknowledged on deposition that she did not receive any disciplinary action in connection with the threat. Pla. Dep. at 140:7-22 – 141:1-8. Because plaintiff has failed to identify any tangible effect resulting from this incident, she has not shown an adverse employment action.

Moreover, plaintiff did not suffer an adverse action when Sullivan told her to use the "blue pallets" rather than the "brown pallets." Artis admitted that Farmer initially told her to use the "blue pallets," Pla. Statement, ECF 1-2 at 4, and conceded on deposition that she was generally required to follow a supervisor's directions while in the warehouse. Pla. Dep. at 32:5-9. Again, plaintiff has not alleged that this incident affected her in any tangible way. Mere instructions from Farmer and Sullivan to use the "blue pallets" do not constitute an adverse employment action.

On deposition, plaintiff further alleged that she suffered gender discrimination because she was "basically not permitted to talk to the males in the warehouse without some consequence." Pla. Dep. at 123:2-5. Nothing in the record indicates what "consequence"

plaintiff purportedly suffered for talking to males in the warehouse. Indeed, plaintiff admitted that no one ever disciplined her for talking to male employees. When asked, "Were you ever disciplined for talking to the male employees?," plaintiff admitted, "Not for that, but I can tell there was something wrong the way she treated me." *Id.* at 139:22 – 140:1-3. In the absence of evidence indicating that this unidentified "consequence" had a tangible effect on the terms and conditions of Artis's employment, it is impossible to say that plaintiff suffered an adverse employment action as a result of speaking with male employees.

There can be little doubt that Artis believes she was treated poorly by Sullivan. However, she does not allege that she suffered an attendant action adversely affecting the terms, conditions, or benefits of her employment. *Cf. King v. Louisiana*, 294 Fed. Appx. 77, 85 (5th Cir. 2008) ("Allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions . . . ."); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir. 2008) (noting, in the context of retaliatory conduct, that "rude treatment . . . . do[es] not rise to the level of material adversity"). Because there is no evidence that these miscellaneous complaints affected a term, condition, or benefit of plaintiff's employment, she cannot prevail. "An action that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of her employment, is not an adverse employment action." *Spriggs v. Pub. Serv. Comm'n of Maryland*, 197 F. Supp. 2d 388, 393 (D. Md. 2002) (citing *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001); *Tuggle-Owens v. Shalala,* 2000 WL 783071, at *8 (D. Md. 2000)). Accordingly, plaintiff has failed to establish that she is entitled to relief under Title VII.

4. <u>New claims raised in plaintiff's Opposition</u>

In her Opposition to defendant's Motion, plaintiff appears to raise several new claims of employment discrimination, including allegations of racial discrimination. At pages eleven through seventeen of her Opposition, plaintiff describes various incidents that allegedly occurred between 2012 and 2013, after Artis filed her MCHR charge and EEOC issued a Notice of Right to Sue. *See* ECF 67 at 11-17. For example, plaintiff recounts, for the first time, that she was suspended by Farmer in August 2012 in connection with an alleged argument she had with an USF employee named David Moore, and that Sullivan sent her to human resources in September 2012, for "being off the floor too long." *Id.* at 12. Plaintiff also alleges that, throughout 2010 and 2012, she was denied a number of requests for vacation leave. *Id.* at 11. Further, plaintiff contends, for the first time, that she was treated less favorably than white female employees. *Id.* at 6. Specifically, Artis claims: "White females (clerks) are treated like supervisors or ha[ve] been promoted[.] They aren't talk[ed] to or treated the way management has done to me or males." *Id.* at 6. According to Artis, "Ms. Sullivan has had a problem with every black female in the warehouse and gave them a hard time but did [sic][17] have a problem with the white females except for one and did nothing." *Id.* at 9.

Notably, plaintiff refers to a "new case," *id.* at 11, and "my new case pending investigation at EEOC." *Id*. at 6. However, the gravamen of the new charge is unclear. In response, defendant argues that "this Court does not have subject matter jurisdiction over these allegations because Plaintiff has not exhausted her administrative remedies with respect to them." Reply, ECF 69 at 3.

---

[17] Context suggests that Artis meant "did not."

As a prerequisite to filing suit under Title VII, a "person aggrieved" by an alleged unlawful discriminatory employment practice must timely exhaust her administrative remedies. *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 406 (4th Cir. 2013). In particular, a plaintiff must file a "charge" of discrimination with the EEOC or, in a "deferral" jurisdiction, with an appropriate state or local agency, within a specified time "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). *See, e.g.*, *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Generally, suit cannot be brought until the administrative process is exhausted. As the Fourth Circuit recently explained in *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 406 (4th Cir. 2013): "An employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process." *See also Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

The filing of an administrative charge "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko,* 429 F.3d 505 at 510. Rather, "the charge itself serves a vital function in the process of remedying an unlawful employment practice." *Balas*, 711 F.3d at 407. In particular, "[t]he exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see Balas*, 711 F.3d at 406-07 (exhaustion of EEOC administrative process "notifies the charged party of the asserted violation" and "brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law") (citations and quotation marks omitted).

The exhaustion requirement is jurisdictional. *Balas*, 711 F.3d at 406 ("[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust

administrative remedies."); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009). Facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). An employee who does not comply with the administrative procedures outlined above has failed to exhaust administrative remedies and therefore is barred from filing suit in federal court. *See, e.g.*, *Miles*, 429 F.3d at 491; *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

Of import here, "[t]he scope of the plaintiff's right to file a federal lawsuit [under Title VII] is determined by the . . . contents" of the charges filed by the plaintiff with the EEOC or corresponding state agency during the process of exhaustion. *Jones*, 551 F.3d at 300 (citation omitted). "'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit.'" *Id.* (citation omitted); *see Miles*, 429 F.3d at 491 (an EEOC charge "'does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination'" (quoting *Bryant*, 288 F.3d at 132)). The Fourth Circuit has said that "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506; *accord Clarke v. DynCorp Intern. LLC*, --- F. Supp. 2d ----, 2013 WL 4495817, at *3 (D. Md. Aug. 20, 2013) (Motz, J.).

"A charge is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' 29 C.F.R. § 1601.12(b) (2004)." *Chacko*, 429 F.3d at 508. Although courts "recognize that EEOC charges often are not

completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). As the Fourth Circuit explained in *Balas*, "persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may, as [the plaintiff] did, file an amended charge with the EEOC." *Id.* (citing 29 C.F.R. § 1601.12(b)).

On the MCHR charge, plaintiff averred:

I. I began my employment with [USF] on September 15, 2000 as a Loader. I am one of the few females who works in the warehouse for [USF]. My immediate supervisor, Nadine Sullivan, treats the male employees more favorably and I have had numerous disputes with her as a result of that fact, which she reported to Shift Manager Ken Goin[s]. In addition, I previously spoke with Human Resources (Josie) about the unjustified firing of a colleague that Ms. Sullivan was involved with.[18] As a result, on February 14, 2010, I was suspended by Goin[s] following a related incident where males were given preferential treatment by Sullivan and she accused me of creating a hostile work environment.

II. [USF] did not provide a reasonable explanation for its actions.

III. I believe I was discriminated against because of my sex, female[,] and retaliation [sic], as to suspension in violation of Title VII of the Civil Rights Act of 1964, as amended.

Pla. Dep. Ex. 15, ECF 63-2 at 49. Plaintiff also "checked the boxes" on the form indicating she was subject to retaliation and discrimination based on sex. *Id.*

To be sure, certain claims absent from a charge of discrimination may be pursued in a subsequent lawsuit, if they are "reasonably related to the original complaint" or "developed by reasonable investigation of the original complaint." *See Jones*, 551 F.3d at 300. But, as noted, a

---

[18] The only other reference to this alleged incident appears in plaintiff's Opposition. Plaintiff contends: "My problems began when I was called into human resources and was questioned by the company attorney about a worker that the company had fired but he was not in the union 355 yet. The manager informed Ms. Sullivan about what I had said about the incident." Opp., ECF 67 at 9.

plaintiff has failed to exhaust administrative remedies where a charge of discrimination references altogether "different time frames, actors, and discriminatory conduct." *Chacko*, 429 F.3d at 506.

Under that standard, plaintiff's race discrimination claim, claims related to denied requests for vacation leave, and any claims she seeks to raise in relation to the 2012 and 2013 incidents presented in her Opposition, do not meet the exhaustion requirement. These allegations of discrimination are distinct from the claims she advanced in her MCHR charge. Nothing in plaintiff's MCHR charge would have reasonably led to an administrative investigation of race discrimination. Nor would it have led to an investigation of discrimination with respect to vacation requests, to the extent plaintiff seeks to establish a claim on this basis. And, as defendant explains, "allegations regarding events that allegedly took place in 2012 or 2013 are well beyond the scope of the May 2010 EEOC charge and could not 'naturally have arisen from the investigation' of it because the investigation was completed in 2011." Reply, ECF 69 at 4-5 (quoting *Chacko*, 429 F.3d at 509)). As the Court said in *Chacko*, 429 F.3d at 509: "[T]he plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." *See also, e.g.*, *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996) (sexual harassment and discriminatory pay and benefits claims dismissed because EEOC charge alleged only failure to promote); *Dennis v. Cnty. of Fairfax,* 55 F.3d 151, 156 (4th Cir. 1995) (discrimination in hiring, training, and promotion claims dismissed because EEOC charge alleged only disparate disciplinary treatment); *Hejirika v. Maryland Div. of Correction*, 264 F. Supp. 2d 341, 346 (D. Md. 2003) (harassment and hostile work environment claims dismissed because EEOC charge alleged only discriminatory failure to promote). Accordingly, plaintiff

cannot defeat summary judgment on her new allegations.

5.  Retaliation

In her Opposition, plaintiff makes vague allegations of retaliation, although she did not raise such claims in her Complaint or in the Amended Complaint.  But, as discussed, plaintiff alleged retaliation on the form Charge of Discrimination, submitted to the  MCHR.  In her Opposition, Artis now contends, "everytime [sic] I voice my opinion or speak up for myself retaliation comes constantly."  ECF 67 at 6.  Plaintiff seems to allege that this "retaliation" comes in the form of write-ups and accusations that she threatened supervisors and co-workers "with no pro[o]f whatsover."  *Id.*  By plaintiff's account, "[e]very time [she] go[es] up to HR about the way Ms. Sullivan or Mr. Dave Farmer treat [her], they retaliate by making things worse for [her]."  *Id.* at 14.  Plaintiff has not explained how they make "things worse" for her, however.  And, plaintiff continues: " I am the one that feels threaten and my job is on the line for speaking out on the differences that are made between me and my co-workers."  *Id.*

Notice pleading rests on the principle that the complaint should "give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (alteration in *Twombly*).  Fed. R. Civ. P. 8 provides: "Pleadings must be construed so as to do justice," but pleadings should not be read so liberally so as to deprive a defendant of notice.  *See Twombly*, 550 U.S. at 555.  In any event, the liberal pleading standards mandated by the Federal Rules of Civil Procedure do "not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage."  *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314 (11th Cir. 2004).  Rather, at the summary judgment stage, "the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).  A plaintiff may

not amend her complaint through argument in a brief opposing summary judgment." *Id.* at 1315; *see also Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("'[I]t is axiomatic that the complaint may not be amended by [a] brief[ ] in opposition'" (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)).

As noted, plaintiff exhausted her administrative remedies with respect to her retaliation claim. However, even construing plaintiff's *pro se* pleadings liberally, as I must, she did not raise retaliation in her Amended Complaint. *See* ECF 10; Pla. Statement, ECF 1-2. Nor has she sought to amend her suit to assert such a claim. Therefore, to the extent that plaintiff asks this Court to consider a retaliation claim, it would be inappropriate to allow the claim to proceed.

## Conclusion

For the foregoing reasons, the Court will grant defendant's motion for summary judgment. A separate Order follows, consistent with this Memorandum Opinion.

Date: February 18th, 2014                    /s/_____
                                             Ellen Lipton Hollander
                                             United States District Judge